Petre, I'm sorry. Mr. Gelfand, good morning. Good morning. Good morning and may it please the court. The district court failed at the sentencing hearing to meaningfully consider the need to avoid unwarranted sentencing disparities in two ways that the statute requires. First, by focusing only on defendants sentenced in that particular courtroom as opposed to nationwide. And second, by failing to focus on defendants like Mr. Petre with a lifelong struggle in history of very significant autism. First, the procedural error. The government in its brief does not actually dispute the most fundamental issue in this appeal. And that is that the district court expressly applied the wrong legal standard under Section 3553. That alone requires a resentencing hearing. What the court was required to do under black letter law. Emphasized as recently as this court's precedent in the more case in 2022 was consider unwarranted sentencing disparities quote across judges and districts. To be clear, more in 2022 was not new precedent. More was simply the latest iteration of what this court emphasized in woods in Bosco Reno and in a plethora of other prior cases. What do you think the district court meant when in the course of the colloquy that you're referring to after saying, no, I think that the most helpful way to do that is to focus on the cases that I've had before. But then says, but I can't do it in a vacuum, etc. Isn't that a isn't that kind of a pivot away from just prior cases in that courtroom to a broader consideration? What else would it refer to? No, I think that, first of all, the district court made three relevant comments, and that was one of them. They're all of the comments are on pages 80 and 86 of the transcript. But what I believe that the court was referring to in the context of actually standing in that courtroom was that the court. But what the court articulated was the struggle with looking at different defendants with different types of struggles. And what the court was basically saying was, I can't. It's not an apples to apples or an apples to oranges comparison of simply looking at 10 other cases that we happen to name from around the country and saying these are identically situated defendants. What the court was not saying there is I'm now considering, for example, the district of Massachusetts precedent that we asked the court to consider or the district of Columbia. Yeah, that was so that was very I mean, I read the transcript. It's very confusing how, you know, there it's that who said the case, right? Who said was one of the cases your honor. But that's the case in which the table was filed. Yes, there was a there was a spreadsheet, so to speak, a table of defendants with autism who had faced similar. So the approach that you took at sentencing made fine sense to me that you would you would canvas what's happened in light cases with defendants with autism that have struggled with the effects of it. Put it in front of the judge and argue for a meaningful downward variance. But when the sentencing got particular and it came to the discussion of those prior cases, it seemed that the district court didn't know what you were talking about. Because there's this point about, hold on, what table are you talking about? Have you filed it, et cetera? And it's kind of like, well, if you go through three or four steps, you can find the table or the spreadsheet. But it was not filed. Nor was it filed right after the sentencing, as best I can tell. But it wasn't that your honor. I think that what the court's comment underscores is that the court did not consider that sentencing data despite. I don't think they knew. I don't think I don't think she had any idea what you were talking about because she said, hold on, what table are you talking about? Your honor, I agree. The court clearly had not looked at the table. The table wasn't included, was it? The table was cited as an ECF entry. And so it was included in the sentencing memorandum submitted in advance of sentencing, but not in the table itself. Was the table found in this case? No, your honor. The table was filed in a separate district court proceeding that was cited in this case. Is your position that it was procedural error for her not to look at the table? Our position is that it was procedural error not to look at a nationwide, not to look at the data that we presented nationwide, which, to be clear, was not limited to the table. In other words, if the court literally says, we understand the court did not have to look at the table, the court did have to consider avoiding unwarranted sentencing disparities that were referenced with particularity in case citations in our 37-page sentencing memorandum. That were referenced orally at the sentencing argument, where we walked through in significant detail not only that there were these other cases, but how they were similar. So let's take the table off the table for a minute. What do you make of the moment when the district court says, I don't find those cases that your attorney is talking about, Mr. Petrie, suitable or helpful comparisons? Tell me about that. I find that what the court was doing, first of all, other than broadly making that statement, the court gave no substantive meaningful consideration, which is what the law requires in this circuit's precedent and credo, to what those disparities were. The court did not reference why, in fact, in the court's view, if this was even the case, those cases were somehow not appropriately analogous. Well, indirectly, the district court did, right, by talking about aggravating circumstances. In other words, the number of images, some of the nature of his communications, et cetera. The court's comments about aggravated circumstances were largely in response and in the context of the 3553 section A1 factor. I think you have to read the transcript as a whole, though, and I mean, you were clearly arguing for a downward variance, a meaningful to, I think, what, 60 months or so? We were, Your Honor. We were arguing for this. No, you were clear about that. I don't think there's any doubt about that. And then the way we get to 180, I think the transcript is equally clear. It's because of what the district court saw as aggravating circumstances. In other words, circumstances warranting a sentence above 60 but below 240. But here's the fundamental problem with that, Your Honor, when we look at what the law requires procedurally and substantively with respect to section A6. The problem is that those circumstances, when considered in the context of some of those other cases, paled in comparison to the severity of alleged offenses that other defendants across the country committed, yet received lower sentences than the court gave. And that's the point behind the sentencing factor, is that it shouldn't turn on whether this particular courtroom had seen particular defendants with either mitigating or aggravating circumstances. What we asked the court to do at sentencing and what we're asking this court to do on remand is actually what the statute requires, which is look at this nationwide information, give meaningful consideration to it. And what's particularly important, what stood out at sentencing, is neither the prosecution nor the court referenced a single other case that the prosecution, for example, said was more analogous and that this would not, essentially the sentence they were asking for, would not avoid unwarranted sentencing disparities. The only other cases that were in any way, shape, or form referenced at the sentencing hearing were the cases that we essentially pulled from other districts throughout the country as the statute and as the law requires the court to consider and the court's broad statement about sentences that she has imposed in prior cases. I see that my time is limited. If I could reserve the remainder for Reuben. Yeah, of course you can. Thank you, Your Honor. We'll hear from the government. Your Honors, may it please the court, Elizabeth Lee Aguilar on behalf of the government. The district court sentence in this case was procedurally proper and substantively reasonable, and it should be affirmed. First, the district court properly calculated the sentencing guidelines, and there were no objections to that guideline range. Second, the district court meaningfully considered the 3553A factors, weighing the defendant's arguments of mitigation and considering aggravating factors, and explaining the reasons for how the district court was weighing the information presented within those factors. Let's go straight to where we just left off with Mr. Gelfand. There are really two 3553A movements at issue here. The district court has an obligation to respond to a defendant's primary mitigation arguments. Mr. Petrie's primary mitigation argument is, I was diagnosed with autism, as I read the record, and that makes a difference here, and I deserve a lower sentence as a result. You can fairly read the transcript. She responds to that primary mitigation argument. But Mr. Gelfand is here saying, we made a specific A6 argument that in other cases around the country, defendants with autism are getting lower sentences. Where in the record do you see the district court responding to that argument, showing that she's considered the sentences that they are alleging other people are getting around the country, this disparity issue, aside from what I mentioned earlier was her statement, I don't find those cases to be suitable or helpful. Is that the only moment, or do you see some other moment? And with that one moment, how do you read that? Your Honor, that was the moment where the district court considered those other cases. And what the district court said was that it did not find those cases to be suitable comparisons because those were based on the specific factors involved with those specific defendants in those unique cases. And what we know from United States v. Gall is that the district court is required to consider the unique factors involved with the defendant standing before it. And those cases that the defendant is talking about, there weren't sufficient details for the court to meaningfully make an apples-to-apples comparison. So the court found that those were not suitable. So is your position the defendant had to do more here when presenting the cases from other districts? I mean, what level of granularity do you think is required? Well, Your Honor, as this court has previously held in Newsom, there is more required to make a comparison between cases than just the offense of conviction, the guideline range, and the ultimate sentence. The 3553A factors require a lot more detailed analysis, including things such as details in the PSR, the person's personal history, details of the offense in question. So here we have a situation where the district court began with the guidelines as it was supposed to, moved into the 3553A factors, and engaged in a meaningful analysis of those factors in substantial detail. The court focused on the offense conduct specifically, considering some of the particularly troubling aspects of this case, many of which the court found were outside of the heartland of typical cases like this that the court sees. The court considered the mitigating evidence of the autism diagnosis, but ultimately determined that there were certain things in the record that belied the evidence that this defendant had a preschooler's understanding of social norms. Some of those things included the content of his collection, which included infant rape and other sadistic content that was outside of the heartland, the defendant's indications that he had previously tried and failed to kick his habit of viewing child pornography, and his statements to a 15-year-old girl from whom he'd requested child pornography that he understood that what he was doing was illegal. Ultimately, the district court explained that she did not find the defendant's autism diagnosis mitigating, explaining that there is ample evidence in the record to show the defendant knew what he was doing was wrong, in direct conflict with the defendant's argument that he lacked an understanding of wrongfulness. I'm sorry, I have to take it back. Is there a risk that you can read the district court's comments? She talks about this disparity question is really difficult for me as a court. She says, it's always difficult despite the data presented. It's hard to truly appreciate the conspiracy. It's not one size fits all. In fact, I can't have it be that way. That's not how I'm treating your case. The way I find it to be most helpful is to look at the cases that I've sentenced. And then she also has this comment we've been discussing. I don't find those other cases to be helpful, whatever's going on in those cases. Is there a risk that her comments can be read as saying that she can't consider other cases because they're all just simply too different? Which would be a refusal to engage with the obligation under 3553A6 to consider unwarranted sentencing disparities. I mean, by her reasoning, she would never be able to look at other cases as a point of comparison. Your Honor, I don't read the district court's statement that way at all. I think the district court considered the evidence presented in the sentencing memorandum and just determined that there wasn't sufficient information in there for her to make the comparison. As the court has held on numerous occasions, the guidelines themselves are the anti-disparity formula. And so by starting with the guidelines, the court considered nationwide disparities. And then applying the 3553A factors addressed the specific aspects of this particular defendant. And the court explained why it determined that this particular defendant didn't warrant further mitigating consideration for that diagnosis. The defendant also makes an argument that his sentence was substantively unreasonable because the district court did not give proper weight to that autism diagnosis. And as I just mentioned, the court did substantially explain her reasoning for why and how she came to the determination that the autism diagnosis was not a mitigating factor. And ultimately, the district court did find that the defendant's age was a mitigating factor. Importantly, the district court sentenced the defendant to 60 months below the guidelines. And there's a nearly irrebuttable presumption of reasonableness when a defendant has been sentenced below the guidelines, as was the case here. The defendant has not overcome that nearly irrebuttable presumption. Finally, the defendant's perfect storm argument that the child pornography guidelines place defendants at a greater risk of sentencing disparities because district courts are permitted to apply lower sentences for policy disagreements also fails. There is no sentencing disparity here, certainly because the defendant received a substantially below guidelines sentence. And in fact, this defendant benefited from a policy disagreement because the district court removed the two-level computer enhancement. In sum, the district court in this case conducted the proper individualized analysis of this particular defendant. The district court started with the guidelines, which considered national disparities, then considered the 3553A factors, the defendant's principle argument mitigation, which is the defendant's autism diagnosis, and thoroughly explained the sentence the district court decided to impose. Unless your honors have any further questions, we ask that the sentence be affirmed. Mr. Aguero, thank you. Mr. Gelfand, you're welcome to come back for rebuttal. Thank you, Your Honor. May it please the court. What the law requires is meaningful consideration of all of the relevant 3553A factors, and our primary focus on appeal on the A6 factor underscores the court's failure to do exactly what the law requires there, which was consider nationwide evidence of defendants with autism. We were detailed. We provided, even at the sentencing hearing orally, the Knott case from the Middle District of Alabama, Collins from the Northern District of Ohio, Palamez Gomez, Jones, a defendant facing nearly identical charges who received 84 months, Husseth, who received probation, there was no mandatory minimum in that possession as opposed to receipt case. Even the Supreme Court's analysis in Gall, which my colleague mentioned, provides that even a guideline sentence can lead to unwarranted sentencing disparities. The district court in Gall varied downward to probation, and the Supreme Court obviously affirmed that. What's significant here is that the district court, by essentially claiming, I can't know all of the details of all these cases that were not in my courtroom, did refuse to engage with what the statute requires. And what the statute requires is looking at a nationwide sample, if you will. When provided to the district court. You don't dispute that she was entitled to disagree with your argument. You're saying she just needed to meaningfully consider. So what if she did conclude she understood your argument and she wanted to address it and disagree with you, what would you have expected her to say that sounds different from what she did say? At a minimum, I would have expected the district court to address any one of those cases, even just naming them, with some specificity. Number two, I would have expected the district court to either look at other cases, for example, if they were provided by the prosecution, that the court felt were more analogous and was consistent with that statute, or to draw factual dissimilarities when we were drawing factual similarities. Have we ever required that? This court has required meaningful consideration in terms of what that looks like. But at the level of granularity that you're responding to Judge Jackson and Cumie's question. I think, Your Honor, that what Congress requires is some evidence of meaningful consideration. And what we have in this case, and I think this is what separates this case from the lion's share of district courts throughout the country who are engaging in similar sentencing, is the comments from the district judge herself essentially saying, I can't do what the statute requires. The problem is that Mr. Petrie is statutorily entitled to a district court to properly engage in that process. So it's not a nearly irrebuttable presumption. The presumption is rebutted by the district court's own articulation of the legal standard the district court was articulating. That's error. Mr. Petrie is entitled to meaningful consideration of that factor, among others. And for that reason alone, in addition to everything else we raised on appeal, we ask that the court remand for resentencing. Thank you. Mr. Gelfand, thanks to you. Ms. Aguero, thanks to you and the government. We'll take the appeal under advisement. Thank you.